LORETTO LESKO, Plaintiff-Appellant, v. JOSEPH ZUFFANTE, Defendant-Appellee.

First District (1st Division)   No. 86—3061

Opinion filed December 31, 1987.

Gary S. Tucker, of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Susan L. Walker, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Loretto Lesko, appeals from orders entered by the circuit court of Cook County in a dental malpractice action filed against defendant, Dr. Joseph Zuffante. Specifically, plaintiff appeals from entry of summary judgment in favor of defendant with respect to her second amended complaint, which judgment incorporated an earlier order dismissing her original complaint; and from denial of her motion to vacate the summary judgment. On appeal, plaintiff contends that: (1) in dismissing her original complaint, the trial court improperly applied the two-year limitations period set forth in section 21.1 of "An Act in regard to limitations" (Limitations Act) (Ill. Rev. Stat. 1979, ch. 83, par. 22.1); (2) in dismissing her original complaint, the trial court erroneously ruled, as a matter of law, that plaintiff had knowledge of her dental-related injury and that the injury had been wrongfully caused by defendant as early as April or May 1978; and (3) the trial court erred in entering summary judgment with respect to plaintiff's second amended complaint. For the following reasons, we affirm the trial court.

The record indicates that during the period from October 1976 through April or May 1978, plaintiff underwent extensive dental treatment performed by defendant. Plaintiff was extremely dissatisfied with the treatment, claiming that it was aesthetically displeasing, ill-fitting, and excruciatingly painful. The record contains numerous notes written or typed by plaintiff during the treatment period which detailed her concerns and problems with the dental work. It is unclear whether these notes were ever given to defendant or whether they were just reminders to plaintiff of points to discuss with defendant. However, the record is clear as to other affirmative measures taken by plaintiff to communicate her dissatisfaction with defendant's dental work and as to her belief that the treatment had not been performed satisfactorily.

For example, on June 12, 1978, plaintiff wrote a letter to the Illinois State Dental Society complaining of pain and unsatisfactory treatment by defendant. In that letter, plaintiff stated that she had been told to see an attorney and that several other dentists had examined her bridgework and had commented that the work had been poorly done. In September 1978, plaintiff wrote a letter to the Chicago Dental Society, claiming that defendant had removed too much gum tissue. Although neither dental society offered any satisfaction, the Chicago Dental Society did advise plaintiff to consult an attorney. Finally, in February or March 1979, plaintiff was told by another dentist that defendant's treatment constituted malpractice and that he would tes-

tify to that fact.

As a result, on January 16, 1981, plaintiff filed a one-count complaint against defendant alleging malpractice. Defendant responded with an affirmative defense, stating that plaintiff had been last treated by defendant in April 1978 and the complaint had not been timely filed within the two-year statute of limitations period. Although plaintiff agreed with the trial court that the two-year limitations period set forth in section 21.1 of the Limitations Act was applicable, she denied that the complaint had not been timely filed, arguing that it had been filed within two years after the acts had been discovered to be negligent in February or March 1979.

On June 12, 1983, following plaintiff's answers to interrogatories and her deposition, defendant moved to dismiss plaintiff's complaint for failure to timely file on the grounds that her notes and letters clearly indicated that she had had knowledge of the injury and knowledge of the fact that the injury had been wrongfully caused in April or May 1978. Thus, pursuant to the two-year limitations period set forth in section 21.1, plaintiff should have filed her cause of action no later than May 1980. On January 19, 1984, Judge Duff entered an *ex parte* order granting defendant's motion to dismiss with prejudice. Plaintiff then moved to vacate the *ex parte* order. Although there is no order in the record, apparently this motion was granted because the record indicates that on March 2, 1984, Judge Duff entered a second order granting defendant's motion to dismiss and allowing plaintiff leave to file an amended complaint. On March 28, 1984, plaintiff filed a first amended complaint which added a fraudulent concealment count. Defendant moved to strike and dismiss the first amended complaint on the grounds that there was no record of proper service on defendant and that plaintiff had failed to allege any intentional affirmative acts of defendant in support of the fraudulent concealment claim. Before the court ruled on defendant's motion to dismiss, plaintiff moved to file a second amended complaint. On November 19, 1984, a hearing was held on defendant's motion and on his response to plaintiff's request to file a second amended complaint. The trial court granted defendant's motion to dismiss the first amended complaint and also granted plaintiff leave to file a second amended complaint. In entering its order, the court made no determination on the merits of the fraudulent concealment claim.

Following the filing of plaintiff's second amended complaint, defendant moved for summary judgment, arguing that plaintiff had failed to properly allege fraudulent concealment. Consequently, defendant argued, in the absence of a sufficient fraudulent concealment

claim, Judge Duff's previous ruling that plaintiff had failed to timely file the malpractice action should prevail and summary judgment be entered. At the hearing on defendant's motion, Judge Rakowski recognized that the statute of limitations issue had been previously resolved by Judge Duff in the March 2, 1984, order, and that the sole issue before the court was whether plaintiff had properly alleged fraudulent concealment. Following arguments, the court stated that the issue as to whether fraudulent concealment had occurred was a question of fact and could not be resolved on a summary judgment motion. The court further noted that the applicable limitations period for a fraudulent concealment cause of action is five years. Defendant responded that pursuant to established Illinois law, even if the fraudulent concealment count had been properly alleged, the five-year limitations period for fraudulent concealment could not be used to estop the applicability of the two-year limitations period for malpractice when a reasonable amount of the two-year period remained after learning of the alleged fraudulent concealment. In this regard, defendant argued that when plaintiff learned of the alleged fraudulent concealment in February or March 1979, she still had at least one year and two months within which to file under the two-year malpractice limitations period. The trial court agreed with defendant that the two-year period applied and, on that ground, granted defendant's motion for summary judgment, precluding the necessity to address the issue as to whether fraudulent concealment had occurred. Plaintiff moved to vacate the summary judgment order on the grounds that it was predicated on an allegedly erroneous ruling made by Judge Duff that section 21.1 of the Limitations Act applied to plaintiff's claim. Plaintiff argued that the appropriate statutory provision was section 15 of the Limitations Act, which allowed a five-year period for filing.

At the hearing on plaintiff's motion to vacate, the trial court agreed that section 21.1 did not apply, but disagreed with plaintiff that the five-year period specified in section 15 applied. Instead, the court held that section 14 of the Limitations Act was the applicable provision. However, because both section 21.1 and section 14 set forth a two-year limitations period, the court held that application of the erroneous statutory provision did not alter the result and plaintiff's motion to vacate the summary judgment was denied.

On appeal, plaintiff initially contends that the trial court improperly applied the two-year limitations period set forth in section 21.1 of the Limitations Act instead of the five-year period set forth in section 15. It is undisputed that in granting defendant's motion to dismiss the original complaint, Judge Duff relied upon section 21.1 of the Limita-

tions Act as it existed at the time of filing. At that time, section 21.1 stated, in pertinent part:

"No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." Ill. Rev. Stat. 1979, ch. 83, par. 21.1.

Plaintiff contends that section 21.1 of the Limitations Act, as it existed in January 1981, was limited to physicians and hospitals and did not encompass dentists. It was not until the statute was amended, effective January 1, 1982, that dentists were specifically included in the provision. Plaintiff further contends that because no provision within the Limitations Act effective at the time of filing in 1981 specifically referred to dentists, the general provisions of section 15 of the Limitations Act must apply to her situation. Section 15 states, in pertinent part:

"[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." (Ill. Rev. Stat. 1979, ch. 83, par. 16.)

Plaintiff offers no legal authority to support her contention.

◼ In response, defendant admits that the trial court erred in relying on section 21.1. However, defendant argues that section 14, not section 15, was the applicable provision. Section 14 states, in pertinent part:

"Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued ***." (Ill. Rev. Stat. 1979, ch. 83, par. 15.)

Defendant also offers no authority to support his position. However, our review of Illinois cases which have addressed statute of limitations

issues in malpractice actions filed against dentists prior to January 1, 1982, indicates that section 14, the general tort provision, is the applicable limitations provision. (See *Kaufman v. Taub* (1980), 87 Ill. App. 3d 134, 410 N.E.2d 114.) Thus, although the trial court erred in relying on section 21.1, that error is irrelevant to the result, as both section 21.1 and section 14 impose a two-year limitations period.

Plaintiff next contends that, in granting defendant's motion to dismiss the original complaint, the trial court erroneously ruled, as a matter of law, that plaintiff had knowledge as early as April or May 1978 that defendant had injured her and that the injury had been wrongfully caused. This ruling was subsequently relied upon by Judge Rakowski in entering summary judgment in favor of defendant as to the second amended complaint and by Judge Lassers in denying plaintiff's motion to vacate the summary judgment order. Plaintiff argues that the date on which she knew her injury was wrongfully caused is disputed by the parties and should not have been decided on a motion to dismiss.

■ Pursuant to Illinois law, the limitations period commences to run in a tort action when a party knows or reasonably should know that he has been injured and that the injury was wrongfully caused. It is not necessary that the party know that his wrong is legally actionable. Generally, the question as to when a party knew or should have reasonably known is a question of fact unless the facts are undisputed and only one conclusion may be drawn from them. *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864.

The issue as to whether the trial court properly determined, as a matter of law, that the limitations period had commenced to run was addressed in *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869. In *Witherell*, plaintiff filed a personal injury action against two doctors and a pharmaceutical company, alleging that the severe injuries to her legs were the result of the doctors' negligent conduct and the company's negligence and breach of warranty. In 1966, Dr. Weimer prescribed a birth control pill to plaintiff. Shortly after she began taking the pills, she began to experience pain and spasms in her left leg, which then became swollen and extremely weak. When plaintiff consulted Dr. Weimer about the problem in March 1967, Weimer's associate, Dr. Taubert, hospitalized her and told her that he thought she had a blood clot in her leg. However, Dr. Weimer told her it was just a muscle condition with which she would have to learn to live.

Plaintiff was released from the hospital one month later. However, the spasms and pain in her leg worsened and persisted through 1971. Throughout this time, Dr. Weimer repeatedly told her that it was just a muscle condition. In July 1972, plaintiff was hospitalized again by

Weimer and Taubert. When plaintiff told Weimer that she had heard that birth control pills cause blood clots, Weimer told her that the pills were safe and not to worry. Plaintiff continued to complain to the doctor and he continued to tell her that her problem was a muscle condition.

In May 1976, plaintiff was again admitted to the hospital for pain in her legs. Again, Weimer told her it was a muscle condition. When plaintiff asked him for a veinogram, he told her that there was nothing wrong with her veins. Plaintiff then discharged Weimer and Taubert and consulted another doctor who admitted her to a hospital and performed a veinogram, which indicated that she had bilateral thrombosis, that some of the veins were occluded from old blood clots, and that the condition in her legs was serious. Plaintiff filed a letter of complaint against Weimer and Taubert in circuit court, which was dismissed without prejudice. She then filed her cause of action on January 4, 1978. The trial court granted defendant's motion to dismiss predicated on plaintiff's failure to file within the two-year limitations period. The appellate court reversed on the grounds that a question of fact existed as to the date the limitations period commenced to run.

The supreme court concurred with the trial court that, as a matter of law, plaintiff's action had not been timely filed. In reaching its conclusion, the supreme court noted that in light of her severe physical difficulties, advice given to her that birth control pills caused blood clots, Dr. Taubert's statements in 1967 and 1972 that she had blood clots, it is "inconceivable to us that a reasonable person would not have realized," at least by the time of the second hospitalization in 1972, that she was not receiving proper diagnosis and treatment. *Witherell*, 85 Ill. 2d at 157.

Similarly, in the present case, the record indicates that plaintiff had been dissatisfied with defendant's work throughout the course of treatment. Plaintiff complained that her bridge did not fit properly; she had difficulty inserting her bridge at times; her gums were bleeding; and she was in excruciating pain. In her own notes, plaintiff indicates that in 1977, a dental assistant looked at her teeth and gums and indicated that she had never seen work done that way. In June 1978, plaintiff wrote to the Illinois State Dental Society complaining that her bridge had been made wrong twice, that her gums had been cut unnecessarily, that the final bridge did not fit at all, and that defendant had refused to see her. Plaintiff further stated in the letter that she and her husband had taken the final bridge to other dentists, who claimed that the bridge was an example of very poor lab work and an improper fit. Plaintiff wrote a similar letter to the Chicago Dental Society. In

addition, plaintiff's husband wrote a letter to defendant in November 1978, explaining that his wife suffered extreme pain due to defendant's dental work.

In our view, plaintiff's awareness of her injuries and their wrongful cause is analogous to the situation in *Witherell*, where plaintiff had had continuous severe pain and had been advised by others of possible improper treatment. As in *Witherell*, we find it "inconceivable" that plaintiff in the present case would not have realized, after nearly two years of excruciating pain and numerous complaints and alleged criticisms by other dentists, that there was a likelihood that she was receiving wrongful treatment. In fact, plaintiff's own notes and letters attest to her awareness as early as April or May 1978.

Moreover, we find the present case distinguishable from those cases relied upon by plaintiff where the reviewing court held that the date of knowledge of injury and its wrongful cause was a question of fact. (*Kaufman v. Taub* (1980), 87 Ill. App. 3d 134, 410 N.E.2d 114; *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 403 N.E.2d 1349; *Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964.) In *Kaufman*, plaintiff consulted defendant dentist on May 31, 1974, and began treatment. When she complained to defendant that her gums were bleeding and painful, he told her that she had not been flossing or brushing properly. On September 2, 1976, plaintiff visited a different dentist because she had moved. At that time, the new dentist informed her of defendant's negligent treatment. On August 22, 1977, plaintiff filed suit against her dentist for negligent treatment conducted during 1974-75. The trial court granted defendant's motion for summary judgment predicated on plaintiff's failure to file within the two-year limitations period. The appellate court reversed the dismissal, on the grounds that the last date of treatment was a disputed fact. By comparison, in the present case, the parties agree that the last date of treatment was in April or May 1978. Further, in *Kaufman*, plaintiff had not consulted other dentists or complained to professional societies. The reason she eventually consulted another dentist was not to check on the work already done, but because she had moved and needed to have additional dental work done. In the present case, plaintiff clearly manifested her awareness of the problem.

In *Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 403 N.E.2d 1349, plaintiff underwent arthoplasty surgery on August 12, 1970, to correct a congenital hip defect. As the result of the surgery, there was damage to plaintiff's femoral nerve. Immediately following the surgery, plaintiff told defendant about problems she was experiencing. Defendant knew it was total denervation and attempted to treat plaintiff until

August 14, 1972, when he sent her to a neurosurgeon. The neurosurgeon informed plaintiff that the nerve disfunction had been caused by the surgery and that it was too late for treatment. Plaintiff filed suit on September 27, 1973, claiming she did not learn of the alleged negligence until August 14, 1972. The trial court entered a judgment in favor of defendant. Plaintiff appealed and defendant cross-appealed, claiming that the cause of action had been barred by the statute of limitations. The reviewing court held that plaintiff had timely filed, reasoning that it was reasonable for plaintiff to have believed that her problems were just the result of a post-operative condition and not negligence. By contrast, in the present case, there was no reasonable explanation for plaintiff's problems other than the dental work.

■ Finally, in *Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964, plaintiff had a lens extraction operation on her right eye on February 4, 1969. Stitches were removed on March 13 and 17, 1969. At that time, plaintiff noticed some sight problems and consulted other physicians. On July 1, 1969, her condition was diagnosed as epithelial downgrowth. For the next eight years plaintiff was treated by eight physicians, including defendant, for this condition. In March 1975, plaintiff consulted an attorney who referred her to a specialist who linked her eye condition to the surgery. Plaintiff filed her complaint on November 4, 1975. The trial court entered summary judgment on the grounds that plaintiff had failed to timely file. The reviewing court reversed, stating that whether plaintiff should have known of the negligent cause of her condition was a question of fact. The court further stated that there was nothing to indicate that at the time plaintiff had discovered her injury, she should have been able to make the causal connection to the surgery when eight physicians over an eight-year period could not do so. In the present case, other dentists allegedly had told plaintiff in 1978 that the dental work had been improperly performed. Accordingly, because the facts indicating plaintiff's knowledge of the injury and its wrongful cause in 1978 are undisputed, we conclude that it was proper for the trial court to rule as a matter of law that the limitations period commenced to run in April or May 1978.

Finally, plaintiff argues that the trial court erred in granting defendant's summary judgment motion with respect to plaintiff's second amended complaint, which alleged medical malpractice and fraudulent concealment. With respect to the fraudulent concealment count, the court ruled, as a matter of law, that the five-year limitations period for fraudulent concealment could not extend the two-year limitations period for the medical malpractice count if the fraudulent concealment

had been discovered within the two-year limitations period and there remained a reasonable portion of that two-year period within which to file. Plaintiff admits that the fraudulent concealment was discovered in February 1979, thus allowing her more than a year of the two-year period within which to file her claim.

We find *Solt v. McDowell* (1971), 132 Ill. App. 2d 864, 272 N.E.2d 53, dispositive of the issue. In *Solt*, plaintiff filed a negligence action on December 21, 1967, against Alice McDowell for injuries sustained in an automobile accident which had occurred on August 28, 1966. Within eight months of the tolling of the two-year limitations period, Alice McDowell answered that she had not been the driver of the car and that no car operated by her had been involved in the collision. Alice's motion for summary judgment was granted on September 26, 1969. Thereafter, on February 27, 1970, plaintiff sought to vacate the order and to add Linda McDowell as a party defendant, alleging that he had not discovered that Linda had been the driver of the subject car until after the expiration of the original two-year limitations period. The trial court granted Linda's motion to dismiss predicated on plaintiff's failure to timely file. The reviewing court affirmed, stating that if a party discovers or could have discovered with reasonable diligence that representations are false at a time when a reasonable period remains within the applicable statute of limitations, then the limitations period for fraudulent concealment does not apply. The *Solt* court found that the eight-month period after plaintiff had learned that Alice had not been the driver was a reasonable time within which to find the true driver.

In the present case, plaintiff had discovered the alleged misrepresentations while there remained over one year within which to file in the malpractice limitations period. In our view, this was a sufficient period of time within which plaintiff could have filed her complaint.

For the aforementioned reasons, we affirm the summary judgment and all related orders entered by the circuit court of Cook County.

Affirmed.

BUCKLEY and MANNING, JJ., concur.